# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

|  |  |
|---|---|
| **CONSTANCE MCMILLEN,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.: 1:10-cv-061-D-D** |
| **ITAWAMBA COUNTY SCHOOL DISTRICT; TERESA MCNEECE,** in her official capacity as the Superintendent of Itawamba County School District; **TRAE WIYGUL,** in his official capacity as Principal of Itawamba Agricultural High School, and **RICK MITCHELL,** in his official capacity as Assistant Principal of Itawamba Agricultural High School, | |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT .............................................................................................................5

I.      THERE IS A SUBSTANTIAL LIKELIHOOD THAT CONSTANCE WILL
        PREVAIL ON THE MERITS OF HER FIRST AMENDMENT CLAIM.........................6

        A.      Constance's Desire to Bring a Same-Sex Date and Wear a Tuxedo to
                Her Prom are Expressive Activities Protected by the First Amendment................6

        B.      The First Amendment Applies with Equal Force in the School Context ...............8

        C.      Defendants Cannot Meet Their Burden of Showing that Constance's
                Expressive Conduct Will Materially and Substantially Disrupt the
                Work and Discipline of the School........................................................................9

        D.      Defendants May Not Rely on the Negative or Disruptive Reactions of
                Other Students to Restrict Constance's First Amendment Rights.........................11

        E.      Defendants May Not Cancel the Prom In Order to Avoid a First
                Amendment Violation.............................................................................................13

II.     CONSTANCE WILL SUFFER IRREPARABLE INJURY UNLESS THIS
        COURT ISSUES AN INJUNCTION ................................................................................15

III.    THE THREATENED INJURY TO CONSTANCE OUTWEIGHS
        WHATEVER HARM THE PRELIMINARY INJUNCTION COULD
        CAUSE DEFENDANTS ...................................................................................................16

IV.     THE RELIEF SOUGHT BY CONSTANCE WILL SERVE THE PUBLIC
        INTEREST.......................................................................................................................16

CONCLUSION.........................................................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*ACLU v. Reno*, 929 F. Supp. 824 (E.D. Pa. 1996) ........................................................17

*Act-Up v. WALP*, 755 F. Supp. 1281 (M.D. Pa. 1991) ................................................13

*Boyd Cty. High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd Cty.*,
    258 F. Supp. 2d 667 (E.D. Ky. 2003) ..............................................................7, 12

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001) .........15

*Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966) ........................................................10

*Butts v. Dallas Indep. Sch. Dist.*, 436 F.2d 728 (5th Cir. 1971) ................................8, 12

*Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001) ..............................6, 7

*Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659 (S.D. Tex. 1997)............................8

*Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*,
    2 F.3d 1514 (11th Cir. 1993) ..........................................................................14

*Collins v. Scottsboro City Bd. of Educ.*, CV-2008-90,
    (Ala. 38th Jud. Cir. Mar. 29, 2008) .................................................................9

*De Jonge v. Oregon*, 299 U.S. 353 (1937)....................................................................17

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ............................15

*Elrod v. Burns*, 427 U.S. 347 (1976) ..........................................................................15

*Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823 (M.D. La. 2006) ..............................17

*Evans v. Newton*, 382 U.S. 296 (1966) ......................................................................15

*Freelance Entertainment, LLC v. Sanders*, 280 F. Supp. 2d 533 (N.D. Miss. 2003)..............15, 16

*Fricke v. Lynch*, 491 F. Supp. 381 (D.R.I. 1980)........................................................6, 7, 9, 11, 12

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)....................................................................................14 n.2

*Gay Student Servs. v. Texas A & M Univ.*, 737 F.2d 1317 (5th Cir. 1984) ............................7, 8, 10

*Gillman v. Sch. Bd. for Holmes County, Fla.*, 567 F. Supp. 2d 1359 (N.D. Fla. 2008) ...........7, 10

*Henkle v. Gregory*, 150 F. Supp. 2d 1067 (D. Nev. 2001) ............................................................7

*Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 1994) .........................................................12, 14

*Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001) ..............................................................13

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) ..........................................15

*Initiative & Referendum Institute v. U.S. Postal Service*,
    116 F. Supp. 2d 65 (D.D.C. 2000)...........................................................................................13

*Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963 (8th Cir. 1999)..................................17

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ....................................................................................................5

*Keyishian* v. *Bd. of Regents*, 385 U.S. 589 (1967).......................................................................17

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001) ............................................7

*McIntire v. Bethel School, Independent School Dist. No. 3*,
    804 F. Supp. 1415 (W.D. Okla. 1992)....................................................................................16

*Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740 (5th Cir. 2009)..................................................9

*Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92 (1972)...........................................13

*Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834 (6th Cir. 2000)...............................13

*Reproductive Rights Network v. President of the Univ. of Mass.*,
    699 N.E.2d 829 (Mass. App. Ct. 1998) ..................................................................................14

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) ..............................................................9

*Shanley v. Northeast Indep. Sch. Dist.*, 462 F.2d 960 (5th Cir. 1972)................................8, 10, 11

*Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530 (N.D. Tex. 2000) .........................................12

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949) .......................................................................17

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)...................................*passim*

*Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622 (1994) ................................................................17

*Univ. of Southern Mississippi Chapter of the Mississippi Civil Liberties Union v.*
    *Univ. of Southern Mississippi*, 452 F.2d 564 (5th Cir. 1971) ..............................................9

## U.S. CONSTITUTION

U.S. Const., amend. I ........................................................................................... *passim*

## PRELIMINARY STATEMENT

This is a case brought pursuant to the First Amendment to the United States Constitution on behalf of Constance McMillen ("Constance"), a senior at Itawamba Agricultural High School.  Constance, like most high school seniors, looks forward to experiencing her prom and treasuring it as a keepsake memory for years to come.  But Defendants — a public school district and public school officials — have professed to deny Constance this rite of passage based on nothing more than their disagreement with her First Amendment protected speech.

Constance is an openly lesbian student, who seeks to attend the prom with her girlfriend as an expression of her own sexual identity — that is, in order not to pretend to be someone other than who she is, and to communicate the equal respect that she believes should be accorded same-sex relationships.  Constance also desires to wear a tuxedo to the prom to express that gender-conforming formal wear should not be the sole allowable attire.   In Constance's words, "[b]y wearing a tux to the prom, I would be telling people that it's perfectly okay for a woman to wear a tuxedo, and that the school shouldn't be allowed to make girls wear a dress if that's not what they are comfortable in."[1]

Defendants informed Constance that they will forbid her from attending the prom with her girlfriend and wearing the attire of her choice.  This constitutes a blatant violation of her First Amendment right of free speech.   Under well-established precedent, school officials may not ban this kind of expressive conduct unless it would "materially and substantially disrupt the work and discipline of the school."  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969).  This is simply not the case here, where Constance seeks to do no more than peacefully express her own sexual orientation, publicly affirm the dignity of her relationship, and

---

[1]    Declaration of Constance McMillen, dated March 15, 2010 ¶ 2, attached to the Mot. for Prelim. Inj. as Ex. A ("Ex. A").

communicate that students should not have to conform to traditional notions of gender-appropriate attire.

Defendants tacitly concede that directly denying Constance the right to attend the prom with her girlfriend and in a tuxedo, and thus censoring her expressive conduct, infringes her First Amendment rights.  In order to avoid this obvious constitutional violation, Defendants announced that they intended to cancel the prom for all students, and instead encouraged "private citizens" to organize an alternative event.  But the law is well-settled that such an attempt to deny a public forum altogether in order to suppress a viewpoint cannot remedy an infringement of the First Amendment, and is itself a continuing violation by Defendants of Constance's constitutional rights.

Absent judicial intervention, it is apparent that Defendants will continue to violate Constance's First Amendment rights.  With the close of the school year rapidly approaching, unless the Court issues an immediate order enjoining Defendants from canceling the prom and enjoining Defendants from prohibiting Constance from bringing her girlfriend as a date to the prom and from prohibiting girls from allow Constance to attend with her girlfriend and in her attire of choice, she will suffer irreparable harm.  For the reasons set forth below, we respectfully submit that the Court should grant Constance's motion for a preliminary injunction.

## BACKGROUND

Constance is a senior at Itawamba Agricultural High School ("IAHS") in Fulton, Mississippi.  Declaration of Constance McMillen, dated March 15, 2010 ¶ 2, attached to the Mot. for Prelim. Inj. as Ex. A ("Ex. A").  She has identified openly at school as a lesbian since she was in the eighth grade.  *Id.*  Last semester, Constance asked her girlfriend, who is a fellow

student at IAHS, to be her date to the IAHS Junior and Senior prom ("prom"). *Id.* ¶ 4. Her girlfriend said yes. *Id.*

The prom originally was scheduled to be held in the IAHS Commons on April 2, 2010. *See* Mem. to IAHS Juniors and Seniors, dated Feb. 5, 2010, attached to the Mot. for Prelim. Inj. as Ex. B ("Ex. B"). Constance has stated that it is "important" for her to go to the prom because "it's like another part of your high school memories . . . . It's just like football games, pep rallies, and homecoming — parts of high school that everyone remembers." Ex. A ¶ 3.

IAHS has promulgated a written rule that every student's prom date must be of the opposite sex. *See* Ex. B. Aware of this IAHS rule prohibiting same-sex couples from attending the prom, Constance asked Defendant Assistant Principal Rick Mitchell ("Mitchell") for permission to bring her girlfriend as her date. Ex. A ¶ 7. Mitchell informed Constance that she and her girlfriend could not purchase their prom tickets as a couple, although male students could accompany each of them as dates separately. *Id.*

Constance also met with Defendants Principal Trae Wiygul ("Wiygul") and Superintendent Teresa McNeece ("McNeece") to inquire whether she could bring her girlfriend as her date to the prom. *Id.* ¶ 8. McNeece told Constance that this would not be allowed. *Id.* McNeece further stated that Constance and her girlfriend could attend the prom separately, but that they would not be permitted to slow dance because doing so could "push people's buttons." *Id.* McNeece added that the school would eject Constance and her girlfriend from the prom if their attendance made others uncomfortable. *Id.*

Constance also asked Wiygul and McNeece whether she would be allowed to wear a tuxedo to the prom. *Id.* ¶ 9. They both told her that wearing a tuxedo would not be

permitted. *Id.* When Constance asked Wiygul and McNeece whether a girl would be allowed to wear slacks and a nice top, McNeece told her that this, too, would not be possible. *Id.* The Itawamba County Board of Education had notified McNeece that girls would be permitted to wear only dresses. *Id.*

Constance wants to attend the prom with her girlfriend because she does not want to "hide who [they] are." *Id.* ¶ 10. She feels that the school is forcing her to pretend that she is someone she is not. *Id.* Constance believes that "[g]ay students have the same right to be at the prom, be with the person they are dating, and dance with the person they are dating as straight students." *Id.* According to Constance, "if [she] cannot share the prom experience with [her] girlfriend then there is not any point in going." *Id.*

Constance also believes that students should not be forced to wear clothes that conform to traditional gender norms. *Id.* ¶ 12. It is important for her to wear a tuxedo to the prom so that she can express to her school community that "it's perfectly okay for a woman to wear a tuxedo, and that the school shouldn't be allowed to make girls wear a dress if that's not what they are comfortable in." *Id.* Constance does not want to attend the prom if IAHS does not allow female students to wear tuxedos. *Id.*

On March 2, 2010, Constance wrote a letter to Defendants McNeece and Wiygul through her counsel, attempting to resolve this conflict informally. *See* Letter from K. Bennett & C. Sun to T. McNeece & T. Wiygul, dated Mar. 2, 2010, attached to the Mot. for Prelim. Inj. as Ex. C ("Ex. C"). The letter requested that Defendants reverse their unlawful policies by no later than March 10, 2010, or face potential legal action. *Id.* On March 10, 2010, the Itawamba County Board of Education announced their intent to cancel the prom for the purpose of prohibiting Constance from bringing her girlfriend and wearing a tuxedo to the prom. Compl. ¶

Page 4

37; *see also* Statement from the Itawamba County Board of Education, dated on or about Mar.

10, 2010, attached to the Mot. for Prelim. Inj. as Ex. D ("Ex. D").  The School Board stated in its

announcement:

> It is our hope that private citizens will organize an event for the
> juniors and seniors.  However, at this time, we feel that it is in the
> best interest of the Itawamba County School District, after taking
> into consideration the education, safety, and well being of our
> students, that the Itawamba County School District not host a
> junior/senior prom at [IAHS].

*Id.*

Because Constance has been denied her right to bring her girlfriend and wear a

tuxedo to the prom, Defendants have effectively banned her from peacefully conveying her

social and political viewpoints that "it is appropriate for gay and lesbian students to bring same-

sex dates to the prom," and that "it is appropriate for female students to wear tuxedos despite

traditional notions of how females should dress."  Compl. ¶¶ 32, 34.  On March 11, 2010,

Constance commenced this action to challenge Defendants' prohibiting her from bringing her

girlfriend and wearing a tuxedo to the prom, and Defendants' stated intent to cancel the prom as

a means of suppressing her constitutionally protected viewpoints.

## <u>ARGUMENT</u>

A district court should grant preliminary injunctive relief when the movant

establishes four factors: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a

substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3)

that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to

defendant; and (4) that granting the preliminary injunction will not disserve the public interest."

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335

F.3d 357, 363 (5th Cir. 2003).  These are all readily met here, and an injunction should issue in

Constance's favor.

## I.      THERE IS A SUBSTANTIAL LIKELIHOOD THAT CONSTANCE WILL PREVAIL ON THE MERITS OF HER FIRST AMENDMENT CLAIM

The First Amendment of the Constitution states that "Congress shall make no law

. . . abridging the freedom of speech."  U.S. Const., amend. I.  But Defendants have done

precisely what this bedrock principle prohibits by censoring Constance's peaceful expression of

social and political viewpoints central to who she is.  Constance is an openly lesbian student who

maintains that she, like all similarly situated persons, has the right to bring a same-sex date to a

social function such as the prom.  *See* Ex. A ¶ 10.  Constance further believes that females

should be allowed to dress in non-gender-conforming attire, and that, in particular, she should be

permitted to wear a tuxedo to the prom.  *See id.* ¶ 12.  Constance's freedom to express these

beliefs falls squarely within the protections afforded by the First Amendment.

### A.      Constance's Desire to Bring a Same-Sex Date and Wear a Tuxedo to Her Prom are Expressive Activities Protected by the First Amendment

It is well established that the "expression of one's identity and affiliation to

unique social groups" may constitute "speech" as envisioned by the First Amendment.  *Canady*

*v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001).  It is equally clear that such

protected expressive activities include bringing a same-sex date to a school prom.  By bringing

her girlfriend to her prom, Constance communicates her identity as a lesbian, as well as her

social and political viewpoint about the equal treatment she believes should be accorded same-

sex relationships.  The First Amendment protects this expressive conduct.

This principle is well illustrated in the factually similar *Fricke v. Lynch*, 491 F.

Supp. 381 (D.R.I. 1980).  In that case, a district court held that a male high school student's

desire to take a same-sex date to his prom contained significant protected expressive content

because:

> he fe[lt] like he ha[d] a right to attend and participate just like all
> other students and that it would be dishonest to his own sexual
> identity to take a girl to the dance. He went on to acknowledge
> that he fe[lt] his attendance would have a certain political element
> and would be a statement for equal rights and human rights.

*Id.* at 385.

Similar expressions by high school students relating to their sexual orientation or

support for gay rights likewise have been held to constitute speech protected by the First

Amendment. Courts have upheld the rights of students to be openly gay at high school, *see*

*Henkle* v. *Gregory*, 150 F. Supp. 2d 1067, 1076 (D. Nev. 2001); to wear pins and buttons

supporting their lesbian and gay classmates, *see Gillman v. Sch. Bd. for Holmes County, Fla.*,

567 F. Supp. 2d 1359, 1375 (N.D. Fla. 2008); and to form gay-straight alliance clubs on school

campuses, *see Gay Student Servs. v. Texas A & M Univ.*, 737 F.2d 1317, 1320 (5th Cir. 1984);

*Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd Cty.*, 258 F. Supp. 2d 667,

690 (E.D. Ky. 2003).

It is also clear that wearing non-gender-conforming attire to the prom is First

Amendment protected expressive activity. Clothing amounts to protected speech because it can

"symbolize ethnic heritage, religious beliefs, and political and social views." *Canady*, 240 F.3d

at 440. Particularly in the school context, students "often choose their attire with the intent to

signify the social group to which they belong, their participation in different activities, and their

general attitudes toward society and the school environment." *Id.* at 441. *See also Littlefield v.*

*Forney Indep. Sch. Dist.*, 268 F.3d 275, 285-86 (5th Cir. 2001) (concluding same and stating that

"[t]he choice to wear clothing as a symbol of an opinion or cause is undoubtedly protected under

the First Amendment if the message is likely to be understood by those intended to view it"

Page 7

(quoting *Canady*, 240 F.3d at 440-41)); *Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659, 665 (S.D. Tex. 1997) (students who wore "rosaries with the intent to communicate their Catholic faith to others" deemed to have engaged in protected First Amendment activity).

Here, Constance desires to wear a tuxedo to her prom with the intent of communicating to the school community her social and political views that women should not be constrained to wear clothing that has traditionally been deemed "female" attire. This message — particularly when combined with her expression of identity through her choice of prom date — is the very kind of speech that falls squarely within the purview of the First Amendment.

### B.    The First Amendment Applies with Equal Force in the School Context

That Constance does not "shed [her] constitutional rights to freedom of speech or expression at the schoolhouse gate" is a bedrock principle of Constitutional law. *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 511 (1969) ("School officials do not possess absolute authority over their students. Students in school as well as out[side of school] are persons under our Constitution.") (internal quotations omitted). *See also Butts v. Dallas Indep. Sch. Dist.*, 436 F.2d 728, 732 (5th Cir. 1971) (declaring First Amendment right to expression one which "school authorities must nurture and protect, not extinguish, unless the circumstances allow them no practical alternative"). Courts routinely recognize that preserving constitutional mandates in the schoolhouse is essential to educators' role in the formation of a free and tolerant society. *See*, *e.g.*, *Gay Student Services*, 737 F.2d at 1326 ("[T]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.") (internal quotations and citations omitted); *Shanley v. Northeast Indep. Sch. Dist.*, 462 F.2d 960, 972 (5th Cir. 1972) ("Ideas in their pure and pristine form, touching only the minds and hearts of school children, must be freed from despotic dispensation by all men, be they robed by academicians or judges or citizen members of a board of education . . . . [T]he purpose of

education is to spread, not to stifle, ideas and views."); *accord Univ. of Southern Mississippi Chapter of the Mississippi Civil Liberties Union v. Univ. of Southern Mississippi*, 452 F.2d 564, 566 (5th Cir. 1971).

This touchstone of our constitution and our schools is exactly why Constance's expressive conduct may not be suppressed merely because educators happen to disagree with her. Moreover, these same precepts that apply in the classroom apply equally to extracurricular school functions. *See*, *e.g.*, *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) (high school football games). In *Santa Fe*, the United States Supreme Court held that First Amendment protections inured at school football games because they are "traditional gatherings of a school community" that bring together "students and faculty as well as friends and family from years present and past." *Id.* at 312. A prom bears these same hallmarks and undoubtedly is a forum where students continue to enjoy robust First Amendment liberties. *See Fricke*, 491 F. Supp. at 386 (recognizing First Amendment right of student to bring same-sex date to prom and noting that "a student's rights . . . do not embrace merely the classroom hours"); *Collins v. Scottsboro City Bd. of Educ.*, CV-2008-90, slip op. at 3 (Ala. 38th Jud. Cir. Mar. 29, 2008), attached to Mot. for Prelim. Inj. as Ex. E (granting injunction requiring school to allow plaintiff to bring same-sex date to prom and recognizing "the importance and social significance placed by students upon such symbolic and monumental events as high school proms").

   C.   **Defendants Cannot Meet Their Burden of Showing that Constance's Expressive Conduct Will Materially and <u>Substantially Disrupt the Work and Discipline of the School</u>**

Defendants may not impinge on Constance's expressive conduct unless they can demonstrate that her speech will "materially and substantially disrupt the work and discipline of the school." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 513 (1969). *See also Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009) ("[W]hen a school

imposes content or viewpoint based restrictions the court will apply *Tinker*.").  Defendants'

"mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular

viewpoint," or their "urgent wish to avoid the controversy which might result from the

expression" will not suffice.  *Tinker*, 393 U.S. at 509-10.  Further, "undifferentiated fear or

apprehension of disturbance is not enough to overcome the right to freedom of expression."  *Id.*

at 508.

        Rather, in order to restrict Constance's First Amendment rights, Defendants are

required to demonstrate "facts which might reasonably have led [them] to forecast substantial

disruption of, or material interference with, school activities."  *Shanley*, 462 F.2d at 970.  "When

the constitutionality of a school regulation is questioned, it is settled law that the burden of

justifying the regulation falls upon the school board."  *Id.* at 969.  *See also Tinker*, 393 U.S. at

509 (it is burden of school officials to justify censorship of student speech); *Gay Student Servs.*,

737 F.2d at 1327 (school "bears the burden of justifying its decision" to restrict students' First

Amendment rights).

        Defendants cannot meet this exacting burden here.  There simply is no evidence

that Constance's expressive conduct would cause any substantial and material disruption in

school activities or discipline.  Constance's expressive conduct is not intended to encourage

student misconduct, incite violence, or denigrate other students.  To the contrary, her acts of

taking her girlfriend to the prom and wearing a tuxedo are peaceful, non-disruptive forms of

speech that cannot be denied by Defendants.  *See*, *e.g.*, *Burnside* v. *Byars*, 363 F.2d 744, 747 (5th

Cir. 1966) (upholding right of students to wear "'freedom buttons' as a means of silently

communicating to members of their community to exercise their civil rights"); *Gillman*, 567 F.

Supp. 2d at 1375 (affirming First Amendment right of student to wear pins and shirts in support of gay civil rights).

      **D.**      **Defendants May Not Rely on the Negative or Disruptive Reactions of Other Students to Restrict Constance's First Amendment Rights**

      Were Defendants to proffer that Constance's expressive conduct will cause disruption at the prom based on the negative reaction of her classmates or others, that rationale would not suffice to restrict her First Amendment rights. The United States Supreme Court has expressly rejected the argument that school officials can restrict speech on the basis of other students' negative and disruptive reactions. *See Tinker,* 393 U.S. at 505-06, 508 (citations omitted). In *Tinker*, the plaintiffs wore black armbands in protest of the Vietnam War. Even though other students made hostile remarks and argued about the armbands instead of paying attention in class, the Court found that disciplining the students who wore armbands constituted a violation of their First Amendment rights. *Id*. at 505-08. The Court even considered the possibility that the armbands might lead to arguments or other disturbances, yet still found this an insufficient basis for muzzling the expression. *Id.* at 508.

      Indeed, the Fifth Circuit Court of Appeals has held that "even reasonably forecast disruption is not *per se justification* for prior restraint or subsequent punishment of expression afforded to students by the First Amendment." *Shanley*, 462 F.2d at 973 (emphasis in original). "[D]isturbances themselves can be wholly without reasonable or rational basis, and those students who would reasonably exercise their freedom of expression should not be restrained or punishable at the threshold of their attempts at expression merely because a small, perhaps vocal or violent, group of students with differing views might or does create a disturbance." *Id.* at 974. The Fifth Circuit Court of Appeals has even imposed a requirement on schools to show that a student's message was made with the specific "*intention* . . . to engage personally in the feared

disruptive actions." *Butts*, 436 F.2d at 731 (emphasis added). Defendants cannot possibly make that showing here.

Once again, the factually analogous *Fricke* case is instructive. There, although the school's proffered concern was "the fear that a disruption would occur and the student or [his date] would be hurt," the court concluded that the defendants had not made the requisite showing that plaintiff's expressive conduct would "materially and substantially interfere with school discipline." *Fricke*, 491 F. Supp. at 387. In particular, the court found that were it not to grant an injunction, it "would completely subvert free speech in the schools by granting other students a 'heckler's veto,' allowing them to decide through prohibited and violent methods what speech will be heard." *Id*. The court added:

> The first amendment does not tolerate mob rule by unruly school children. This conclusion is bolstered by the fact that any disturbance here, however great, would not interfere with the main business of school education. No classes or school work would be affected; at the very worst an optional social event, conducted by the students for their own enjoyment, would be marred.

*Id*. The court held that school officials had a duty to enact "appropriate security measures" to address potential disruptive conduct, rather than censoring the student's expression. *Id*. at 385. *See also Holloman v. Harland*, 370 F.3d 1252, 1276 (11th Cir. 1994) ("we cannot afford students less constitutional protection simply because their peers might illegally express disagreement through violence instead of reason"); *Boyd Cty. High Sch. Gay Straight Alliance v. Bd. of Educ of Boyd Cty.*, 258 F. Supp. 2d 667, 690 ("*Tinker* . . . [is] designed to prevent Defendants from punishing students who express unpopular views instead of punishing the students who react to those views in a disruptive manner."); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 549 (N.D. Tex. 2000) (granting injunction precluding enforcement of resolution that allowed group of library card holders to remove books about families headed by same-sex parents from

Page 12

children's section of public library because conferring upon these patrons power to remove

books would unconstitutionally allow them to veto protected expression simply because of their

adverse reaction).

In light of these authorities, even if Defendants were to argue that Constance's

expressive conduct would be disruptive because her classmates or others may have a negative

reaction to it, that argument would not be a valid basis to deny her Constitutional rights.

> **E.      Defendants May Not Cancel the Prom In Order to**
> **Avoid a First Amendment Violation_____**

In a transparent attempt to avoid Constitutional scrutiny and to suppress

Plaintiff's viewpoints, Defendants have announced their intent to cancel the prom, on the basis of

purported "distractions to the educational process."  *See* Ex. D.  Defendants apparently

mistakenly believe that they can quell Constance's protected expressive activity, so long as they

shut out all students from the prom.  Defendants' act is unavailing because it contravenes both

the spirit and letter of the law.

A First Amendment violation may not be avoided by closing down a public

forum.  *See Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 842 (6th Cir. 2000)

(changing forum rules to elude controversy insufficient to avoid constitutional violation);

*Initiative & Referendum Institute v. U.S. Postal Service*, 116 F. Supp. 2d 65, 73 (D.D.C. 2000)

("The government may close a public forum that it has created by designation . . . , so long as

the reasons for closure are not content-based") (citing *Police Dep't of the City of Chicago v.

Mosley*, 408 U.S. 92, 96 (1972)); *Act-Up v. WALP*, 755 F. Supp. 1281, 1290 (M.D. Pa. 1991)

(closing public forum to all speakers in order to silence views of one speaker held

unconstitutional); *see also Hopper v. City of Pasco*, 241 F.3d 1067, 1079-81 (9th Cir. 2001)

(terminating arts program altogether after disputes arose over controversial content of art

display neither mooted controversy nor excused constitutional violation); *Reproductive Rights Network v. President of the Univ. of Mass.*, 699 N.E.2d 829, 834 (Mass. App. Ct. 1998) (finding unconstitutional "the drastic security measure of locking the building [*i.e.*, the public forum] taken in reaction to the content of the plaintiffs' message . . . ."). *Cf. Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1529 (11th Cir. 1993) ("[A]ction by any branch of government may be invalid if the challenger shows the action was partly motivated by purposes offensive to the Free Speech Clause and the defender cannot prove that illicit motivation was not in fact the cause of the action"). Likewise here, Defendants may not cancel an entire prom to prevent Constance from expressing a viewpoint with which they may disagree. *See, e.g., Holloman,* 370 F.3d at 1280 ("Government actors may not discriminate against speakers based on viewpoint, even in places or under circumstances where people do not have a constitutional right to speak in the first place.").[2]

Moreover, Defendants have not only canceled the prom, but have actively encouraged an ostensibly "private citizens" prom, which presumably would implement the same ban on protected speech that the school itself sought to implement directly. But the Constitution stands vigilant against the school's countenancing a so-called "private citizens" prom. *See*

---

[2]      Further, "it is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Defendants who cease a practice must make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* Otherwise, violating defendants would be "free to return to [their] old ways." *Id.* at 170. By no means is it "absolutely clear" here that Defendants will not retreat to unconstitutional activity by, among other things, reversing their decision to cancel the prom; allowing "private citizens" to employ school resources or personnel when organizing a substitute prom; stamping their imprimatur on a "private" prom that may itself suppress Constance's expressive conduct; or hosting future school-sponsored activities in which Constance's First Amendment rights are again denied.

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001)

(observing that "state action" occurs where government "provides significant encouragement,

either overt or covert") (internal citations and quotations omitted); *Evans v. Newton*, 382 U.S.

296, 302 (1966) (municipal government's transfer of title of racially segregated park to private

trustees did not elude fact that continued segregation of park was unconstitutional state action).

Defendants' cancellation of the IAHS prom and encouragement of a "private

citizens" prom that presumably would also censor Constance's expressive conduct are both as

unconstitutional as Defendants' initial decision to directly prohibit Constance from attending the

prom with her girlfriend and dressed in a tuxedo.  For these reasons, Constance has a strong

likelihood of succeeding on the merits of her First Amendment claim.

## II.    CONSTANCE WILL SUFFER IRREPARABLE INJURY UNLESS THIS COURT ISSUES AN INJUNCTION

Defendants' actions unjustly infringe upon Constance's First Amendment

freedoms and cause her irreparable injury.  "It is well settled that the loss of First Amendment

freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a

preliminary injunction."  *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th

Cir. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)).  *See also Ingebretsen v. Jackson

Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("Loss of First Amendment freedoms, even for

minimal periods of time, constitute irreparable injury.") (citing *Elrod*, 427 U.S. at 373);

*Freelance Entertainment, LLC v. Sanders*, 280 F. Supp. 2d 533, 547 (N.D. Miss. 2003) ("There

is a strong presumption of irreparable injury in cases involving infringement of First Amendment

rights.") (citing *Elrod*, 427 U.S. at 373).  There is a substantial threat that irreparable harm will

result if a preliminary injunction is not granted.  Accordingly, absent an injunction, Constance

will suffer irreparable harm as a matter of law.

III.    **THE THREATENED INJURY TO CONSTANCE OUTWEIGHS WHATEVER HARM THE PRELIMINARY INJUNCTION COULD CAUSE DEFENDANTS**

The harms to Constance described above greatly outweigh any potential harm that Defendants might suffer were she to attend the prom with her girlfriend and dressed in a tuxedo. Defendants also will suffer no harm if they are ordered to hold the prom as originally planned. Indeed, Defendants are unlikely to show that the entry of a preliminary injunction would harm them in *any* way.

There is no evidence that Constance's attendance at the prom will cause any disruption to the prom or to the discipline or daily routine of IAHS. Further, a preliminary injunction in this case will not prevent Defendants from even-handedly enforcing school policies against disruptive conduct or misbehavior at the prom. To the extent that the Defendants are concerned with possible disruptive reactions to Constance's forms of expression at issue, they may still fairly punish students who break school conduct rules and enact "appropriate security measures," as is their duty under the law. *See* p. 12, *supra.* The balance of harms therefore favors the issuance of equitable relief. *See McIntire v. Bethel School Indep. School Dist. No. 3*, 804 F. Supp. 1415, 1429 (W.D. Okla. 1992) ("[T]he threatened injury to Plaintiffs — impairment and penalization of the exercise of their First Amendment rights — outweighs whatever damage, if any, the proposed injunction may cause Defendants.").

IV.    **THE RELIEF SOUGHT BY CONSTANCE WILL SERVE THE PUBLIC INTEREST**

The entry of a preliminary injunction in this case will serve the public interest. "[I]t is in the public's interest to protect rights guaranteed under the Constitution of the United States." *Freelance Entertainment*, 280 F. Supp. 2d at 547.

Protecting Constance's right to express her views is in the public interest because it is generally accepted that American society at large benefits from peaceful expression and the

exchange of ideas.  As the Supreme Court has stated, "[t]he vitality of civil and political

institutions in our society depends on free discussion . . . . [I]t is only through free debate and

free exchange of ideas that government remains responsive to the will of the people and peaceful

change is effected.  The right to speak freely and to promote diversity of ideas and programs is

therefore one of the chief distinctions that sets us apart from totalitarian regimes."  *Terminiello v.*

*City of Chicago*, 337 U.S. 1, 4 (1949) (citing *De Jonge* v. *Oregon*, 299 U.S. 353, 365 (1937)).

*See also Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("[T]he

public interest favors protecting core First Amendment freedoms."); *Entertainment Software*

*Ass'n v. Foti*, 451 F. Supp. 2d 823, 837 (M.D. La. 2006) ("It is undoubtedly in the public interest

to protect First Amendment liberties."); *ACLU v. Reno*, 929 F. Supp. 824, 851 (E.D. Pa. 1996)

("No long string of citations is necessary to find that the public interest weighs in favor of having

access to a free flow of constitutionally protected speech.") (citing *Turner Broad. Sys., Inc.* v.

*FCC*, 512 U.S. 622, 641 (1994) ("At the heart of the First Amendment lies the principle that each

person should decide for himself or herself the ideas and beliefs deserving of expression,

consideration, and adherence. Our political system and cultural life rest upon this ideal.")).

      Protecting freedom of speech resonates strongly in the context of America's

public high schools.  Indeed, as the Supreme Court noted in *Tinker*, "[t]he vigilant protection of

constitutional freedoms is nowhere more vital than in the community of American schools."  393

U.S. at 512 (quoting *Keyishian* v. *Bd. of Regents*, 385 U.S. 589, 603 (1967)).  Upon graduation,

today's American public school students enter a much more complex and diverse community

than their parents did when they graduated.  Modern technology has made it possible to connect

instantaneously with people of different languages, cultures, and lifestyles.  Today's students

must be prepared to effectively communicate with and respect individuals who have points of

view different from their own.  Stifling a free exchange of ideas does a disservice to IAHS

students and to the diverse American public.  The public interest weighs heavily in favor of

issuing an injunction.

## CONCLUSION

For the foregoing reasons, Plaintiff Constance McMillen respectfully requests that this Court grant a preliminary injunction preventing Defendants from cancelling or threatening to cancel the IAHS prom, originally scheduled for April 2, 2010, and enjoining Defendants from forbidding her from bringing a same-sex date to the prom and from wearing a tuxedo to the prom, pending litigation of this case.


DATED: March 16, 2010                    Respectfully submitted,

  /s Kristy L. Bennett
Kristy L. Bennett (MS Bar # 99525)
American Civil Liberties Union of Mississippi
P.O. Box 2242
Jackson, MS 39225
(601) 354-3408
Fax: (601) 355-6465
kbennett@aclu-ms.org

Christine P. Sun*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
Fax:  (212) 549-2650
csun@aclu.org

Norman C. Simon*
Joshua Glick*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
(Fax): (212) 715.8000
nsimon@kramerlevin.com
jglick@kramerlevin.com

*Pro Hac Vice Motion to Follow

Attorneys for Plaintiff

KL3 2768003.6

## CERTIFICATE OF SERVICE

I certify that on March 16th, 2010, I filed the foregoing Plaintiff's Memorandum of Law in Support of the her Motion for  Preliminary Injunction with the Clerk of Court for the Northern District of Mississippi via the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

      Benjamin Griffith
      Daniel Griffith
      Griffith & Griffith
      123 South Court Street
      P.O. Drawer 1680
      Cleveland, MS 38732
      **COUNSEL FOR THE ITAWAMBA COUNTY SCHOOL DISTRICT**

THIS the 16th day of March, 2010.

                    /s/ Kristy L. Bennett
                    KRISTY L. BENNETT