# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CONSTANCE McMILLEN**                                                          **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 1:10-cv-00061-GHD-JAD**

**ITAWAMBA COUNTY SCHOOL DISTRICT;**                                           **DEFENDANTS**
**TERESA McNEECE, in her official capacity as the**
**Superintendent of Itawamba County School District;**
**TRAE WIYGUL, in his official capacity as Principal of**
**Itawamba Agricultural High School; and RICK MITCHELL,**
**in his official capacity as Assistant Principal of Itawamba**
**Agricultural High School**

## MEMORANDUM OF AUTHORITIES IN OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION

**COME NOW** Defendants, by counsel, and file this their Memorandum of Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction [Docket Entry 4] that would override the decision of the Defendant District not to host a prom at Itawamba Agricultural High School, a social event which is now being sponsored by parents of high school seniors and juniors and which will be held at the Tupelo Furniture Market in Tupelo, Mississippi.

## I. BACKGROUND

The Plaintiff wishes to make the Defendant District the site for a national constitutional argument over gay and lesbian rights. The Board of Education as the District's governing authority had to address a very explosive and disruptive issue and how to get beyond it for the sake of the school. This is not an issue where anyone has been denied an education. Rather, this is a social event that is disruptive to the school environment and the core public education function of the school because people are on all sides of the issue. Since the Board of Education cannot control the emotions of both sides, the only rational option in order to minimize increasing substantial and material disruption of the educational system, distraction of students, harmful divisiveness, and the risk of potential liability, was a decision not to host this social event, which is now being sponsored

by parents of high school seniors and juniors and will be held at the Tupelo Furniture Market in Tupelo, Mississippi. There is no constitutional issue stated, nor is any cognizable constitutional right of Plaintiff implicated by the Board of Education's decision to withdraw sponsorship of the school prom. Significantly, the question of whether or not the Plaintiff will be allowed to bring a same-sex date to a school-sponsored prom is not proper for injunctive relief and is alternatively barred under the doctrine of mootness.

## II. SCHOOL SPONSORSHIP

The Plaintiff argues that the District has closed an available public forum. This is not the case. The District has a content neutral facility use policy. (See Board Policy KG at Exhibit "D"). A social event for the juniors and seniors has been scheduled elsewhere, namely, at the Tupelo Furniture Market and is sponsored by their parents. No facility use request has been made to the District. This is an issue of withdrawal of school sponsorship, nothing more. In fact, for at least the past four years, the Defendant Board has debated and discussed the matter of withdrawing its sponsorship of the annual prom based primarily on concerns over potential liability exposure.

### Potential Liability Exposure

The potential exposure of a school district to damages arising from disruption and private acts of violence is well known.[1] *Miss. Code Ann.* § 37-9-69 (2008), provides in part that "superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess." *Miss. Code Ann.* §37-9-301 (k) provides school boards with the authority and duty to "authorize the use of the school buildings and grounds for the holding of public meetings and gatherings of the people under such regulations as may be prescribed by said board." These have historically been questions of state

---

[1]*Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911 (Miss. 2001)(Claim against a school district for injuries sustained in a fight that occurred during a school sponsored sporting event.)

law.² When confronted with a clearly substantial disruptive issue material interference with school activities, the potential exposure of liability, and the core function of providing a public education to students, the Defendant District chose to cancel school sponsorship of a social event. The decision of the Defendant District to avoid controversy that undermined the preservation of order in the school, substantial disruption and conduct destructive of a proper educational environment by not sponsoring a prom is authorized by state law and is not a constitutional issue.

### III. INJUNCTIVE RELIEF

*Fed. R. Civ. Pro. 65* governs preliminary injunctions. A preliminary injunction is a powerful remedy used sparingly in cases with a set of extraordinary circumstances. In the Fifth Circuit, in considering whether an exercise of an Article III court's equitable powers should issue, the court consults the well-established quantitative test for awarding injunctive relief found in *Canal Authority of the State of Florida v. Callaway*, 489 F. 2d 567 (5th Cir 1974). *Canal Authority* is the preeminent authority on what elements are necessary before a court is in a position to even consider granting preliminary injunctive relief. These four basic requirements comprise the standard for issuing a preliminary injunction and must be established by a clear showing by the Plaintiff: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury to the plaintiff if the injunction is denied outweighs the threatened harm to defendant if the injunction is granted; and (4) that granting the preliminary injunction will not disserve the public interest. Burden of proving that the above prerequisites are met rests with the plaintiff. Further, even if the plaintiff

---

²In the case of *Jane Doe v. San Antonio Independent School District*, 197 Fed. Appx. 296 (5th Cir. 2006), the Fifth Circuit found that claims of a student injured outside of school grounds were not actionable under §1983 because the defendants were not under a constitutional obligation to protect the student from the acts of her uncle. *Id*. at 301. The case of *Doe v. Covington County School District*, 2009 U.S. Dist. LEXIS 40245 (S. Dist. Miss. 2009) found that neither the Due Process Clause, nor any recognized exception, provided an actionable constitutional right to protection from nonstate actors.

successfully establishes all four *Canal Authority* prongs, the decision of whether or not to grant or deny a preliminary injunction remains discretionary with the court. *Hull v. Quitman County Bd. Of Educ*., 1 F. 3d 1450, 1453 (5th Cir. 1993)(citing *Roho, Inc. v. Marquis*, 902 F. 2d 356, 358 (5th Cir. 1990)).

**Present Controversy**

The present controversy involves attendance at a school prom by a female student who wants to attend the prom with her female date dressed in male attire. The two students are admittedly gay and wish to challenge the Itawamba Agricultural High School's (IAHS) rule that does not allow same sex couples to attend the prom as dates. That rule has been in effect for over twenty years and was originally intended to serve as a means of minimizing consumption of alcohol at school social events and functions by preventing male students from bringing to such school social functions other male students who did not attend the school and thereby turn the event into a party. In the case at bar, when the students were denied permission to attend, the matter became publicized nationally and became a controversial, disruptive and divisive issue in the school and the community. The matter was placed in the lap of the lay board, with advice from its attorneys, to determine how to handle this controversy.

With each passing day, the matter has become more divisive and more disruptive in the school and the community. The matter became so divisive and disruptive to the efficient operation of the school that the Board of Education decided not to delay further discussion of withdrawing District sponsorship of the event. To the extent that Plaintiff claims her First Amendment rights have been violated by the Board of Education's decision, a school may regulate speech where school officials can "reasonably ... forecast substantial disruption of or material interference with school activities." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 514 (1969); *cf*. *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 266 (1988).

4

## Supporting Affidavit of Jim Keith

In support of its Response and Opposition to Plaintiff's Motion for Preliminary Injunction, Defendant submits the affidavit of Jim Keith, an attorney with extensive experience representing, consulting and training boards of education throughout the State of Mississippi. Mr. Keith represents ten school districts as board attorney and consults frequently with over 100 school districts on various legal issues. He is the attorney for the Mississippi Board of Education Association and for the Mississippi High School Activities Association. In his role as attorney for the MSBA, Mr. Keith assists in the training for all new Board of Education members as required by state law, providing approximately three hours of legal training to every board member who is appointed or elected to a Board of Education in Mississippi. He has been providing this legal training for approximately ten years and has made presentations nationally on special education, employment in the school setting, and student related matters. Mr. Keith has represented school districts in Federal and State Court and various administrative agencies, represented the Jackson Public School District in *Knox v. Jackson Public School District* involving prayer over the intercom and subsequent litigation by the principal for his suspension for allowing the prayers, and also represented the Jackson Public School District in *Ingebretsen v. Jackson Public School District*, a case involving the challenge to the state law that allowed prayer at school-related events.

The affidavit of Jim Keith established certain critical matters regarding board decision-making and handling of controversial matters such as the one that is the subject of the present litigation. Mr. Keith interviewed board members and school personnel knowledgeable of the facts of the present controversy, reviewed board policy and relevant documents to become familiar with the facts of this case.

**Facts Established Regarding Disruption of Educational Process**

According to Mr. Keith, the following facts have been established:

(1)     The Board of Education was caught in a no-win situation as this matter developed. The school administration had enforced a 20+ year old IAHS rule regarding attendance at proms. The matter immediately became publicized locally and nationally, with tremendous pressure placed on board members on both sides of the issue.

(2)     One board member received threats at his place of employment because of the stance he had taken on the matter. Board members have received emails, telephone calls and Facebook messages regarding this matter. The educational process at school was disrupted by students talking about the issue during class making it impossible for teachers to carry out their instruction.

(3)     The principal had long been concerned about the amount of time spent by students and teachers planning and preparing for the prom, causing valuable educational time to be missed. He also had concerns about students' drinking and drug use before and after the prom and the potential liability for the school district. There has been additional concern over having sufficient security and personnel to supervise the students on prom night.

(4)     The board had to make a decision that in its judgment was the best decision for the district to get back to its mission of educating children.

(5)     The current controversy involved attendance at a prom, a social event that should allow students to have a good time, build camaraderie and enjoy each other's fellowship. However, with the divisive nature of the issue, that was not going to happen at the prom, regardless of whether the two female students were allowed to attend as they wished or whether they were denied permission to go as requested.

(6)     With all the disturbances and distractions, with teachers having trouble getting students to focus in class and prepare for upcoming state-wide tests, and in light of on-going concerns the board

6

and administration had regarding sponsorship of the prom, the board believed the best decision was for it to withdraw its sponsorship of the prom and get back to its main mission of the education of its students.

(7) The explosion of emotions, both locally and nationally, required the board to address the disruption to the educational process and evaluate whether it should be in the business of sponsoring the prom. The board believed that withdrawing its sponsorship of the prom was the best option available to return the school to some sense of normalcy for the remainder of the school year.

### Analysis of *Canal Authority* Requirements

The affidavit and testimony of Jim Keith informs this Court's analysis of the four requirements under *Canal Authority* for the issuance of a preliminary injunction.

**(1) The Plaintiff is not likely to Prevail on the Merits**.

Defendant's withdrawal of sponsorship of the prom does not infringe upon any cognizable federal constitutional right of Plaintiff. No First Amendment liberties or associational rights are implicated by the decision to withdraw sponsorship of a school prom that is now being sponsored by a group of parents of 11th and 12th grade students.

**(2) The Plaintiff will not suffer Irreparable Harm.**

The Defendant District merely withdrew school sponsorship of the prom. A social event is now being sponsored by parents for the juniors and seniors. Plaintiff's First Amendment rights have not been implicated, nor infringed, by the mere withdrawal of sponsorship of the school prom, an action the Defendant has discussed and debated for at least the past four years based on liability concerns. Hence, the Plaintiff can show no irreparable harm.

**(3) The Plaintiff's claim of injury does not outweigh the Potential for Civil Unrest.**

The Plaintiff still has the opportunity to attend the social event sponsored by parents. The harm of enjoining the Defendant District on the other hand would disrupt its ability to govern

local schools and provide and manage a public education program for all students, including Plaintiff. Moreover, the unseemly spectre of an Article III Court entering into the minutiae of deciding whether, then, how, and under what circumstances to hold a prom would immerse the Court in an endless morass of managing the details, timing and content of a social function for high school students.

**(4) Public Interest is Expressed in the Will of the Legislature.**

The Defendant District has withdrawn sponsorship of a social event pursuant to the statutory authorization afforded the District by the Mississippi Legislature. The public has elected the to efficiently manage public education. Clearly, interfering with the ability of the Defendant District to govern its own schools would undermine its effective management and governance of the public education of students.

## IV. MOOTNESS

The prom has not been cancelled. It will be sponsored by parents of 11th and 12th grade students and held at the Tupelo Furniture Market. Members of the 11th and 12th grade classes can still attend the social event. This controversy is moot.

## V. CONCLUSION

As noted in *Canal Authority*, a preliminary injunction is an extraordinary remedy which the court is reluctant to use except in extreme circumstances. Based on the applicable *Canal Authority* factors, such extreme circumstance have not been shown, and Plaintiff cannot carry her cumulative burden of persuasion, which requires that she make a clear showing of each of the four *Canal Authority* factors justifying entitlement to preliminary injunctive relief. Plaintiff has failed to show a violation of Plaintiff's First Amendment rights and can establish no constitutional deprivation in this case, which for purposes of the instant motion involves a decision to withdraw sponsorship of

a prom.[3]

Plaintiff has thus failed to show that any constitutional violation by the Defendant subjected her to irreparable injury, and has failed to establish a probability of prevailing on the merits. Further, Plaintiff has failed to carry her burden of persuasion by making a clear showing that any alleged threatened injury to Plaintiff, if the preliminary injunction is denied, far outweighs the potential harm to Defendant if injunctive relief ensues. Finally, Plaintiff has failed to carry her burden of persuasion by making a clear showing that the issuance of a preliminary injunction at this stage of the proceedings will not disserve the public interest. Issuance of a preliminary injunction would not be in harmony with the greater public interest of enabling the Defendant to exercise its judgment to provide essential governance and direction for the public education of students, including Plaintiff.

There being no adequate showing of a genuine entitlement to the equitable powers of this Court, Defendant respectfully submits that Plaintiff's Motion for Preliminary Injunction should be denied.

**NOW, THEREFORE,** Defendants pray that upon a hearing hereof, Plaintiff's Motion for a Preliminary Injunction should be denied.

**RESPECTFULLY SUBMITTED** this the 19th day of March, 2010.

**GRIFFITH & GRIFFITH**

By: *Ben Griffith*
       Benjamin E. Griffith, MSB #5026

---

[3] See generally *Palmer v. Thompson*, 403 U.S. 17, 225 (1971)(Black, J.). ("[T]here is an element of futility to invalidate a law because of the bad motives of its supporters. If the law is struck down for this reason, rather than because of its facial content or effect, it would presumably be valid as soon as the ... relevant governing body repassed it for different reasons.").

Of Counsel:

**GRIFFITH & GRIFFITH**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Telephone:  662-843-6100
Facsimile:   662-843-8153
bgriff@griffithlaw.net

**MICHELE H. FLOYD**
Itawamba County School District
605 South Cummings St.
Fulton, MS 38843
Telephone: 662-862-2159
Fax: 662-862-4713
mhfloyd@itawamba.k12.ms.us

## CERTIFICATE OF SERVICE

I, Benjamin E. Griffith, one of the attorneys for Defendants, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities* to be delivered by the federal ECF filing system to:

> Michele H. Floyd
> Attorney for Itawamba County School District
> mhfloyd@itawamba.k12.ms.us
>
> Kristy L. Bennett, Esq.
> Christine P. Sun
> kbennett@msaclu.org
> csun@aclu.org
> Norman C. Simon
> Joshua Glick
> nsimon@kramerlevin.com
> jglick@kramerlevin.com

**ELECTRONICALLY FILED** this 19th day of March, 2010.

*/S/ Ben Griffith*
_____
 Benjamin E. Griffith, MSB #5026