IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CONSTANCE MCMILLEN                                              PLAINTIFF

vs.                                                             No. 1:10CV61-D-D

ITAWAMBA COUNTY SCHOOL
DISTRICT; TERESA MCNEECE, in her
official capacity as the Superintendent of
Itawamba County School District; TRAE
WIYGUL, in his official capacity as
Principal of Itawamba Agricultural High
School, and RICK MITCHELL, in his
official capacity as Assistant Principal of
Itawamba Agricultural High School                               DEFENDANTS

OPINION DENYING MOTION FOR PRELIMINARY INJUNCTION

Presently before the court is Plaintiff's motion for preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. Upon due consideration, the court finds that the motion should be denied. The Court, however, holds that Plaintiff has met her burden of proof as to three of the four factors required for a preliminary injunction.

A. *Factual Background*

Plaintiff, Constance McMillen ("Constance"), is a senior at Itawamba Agricultural High School ("IAHS") in Fulton, Mississippi. Constance has been openly identified as a lesbian at school since the eighth grade. Last semester, Constance asked her girlfriend, who is a fellow student at IAHS, to be her date to the IAHS Junior and Senior prom ("prom") and her girlfriend accepted her invitation.

According to a Memorandum to IAHS Juniors and Seniors issued on February 5, 2010, the prom was scheduled to be held in the IAHS Commons on April 2, 2010. Also in the

IAHS's "opposite sex" date policy, Constance approached the assistant principal, Rick Mitchell, to ask permission to bring her girlfriend as her date to the prom. Constance was informed that they could attend with two guys as their dates but could not attend together as a couple.

Constance then met with Principal Trae Wiygul ("Wiygul") and Superintendent Teresa McNeese ("McNeese") to ask for permission to bring her girlfriend as her date to the prom and was told the two could attend separately but not together as a couple. In addition, Constance was informed that she and her girlfriend would not be allowed to slow dance together because it could "push people's buttons." Constance testified that Superintendent McNeese also informed her that if she and her girlfriend made anyone uncomfortable while at the prom, they would be "kicked out." Constance also inquired as to whether she would be allowed to wear a tuxedo to the prom. Both Wiygul and McNeese informed Constance that only boys were allowed to wear tuxedos. Further, after checking with the Itawamba County Board of Education, Superintendent McNeese informed Constance that girls were not allowed to even wear slacks and a nice top but must wear a dress. Disappointed by Defendants' answers, Constance contacted the ACLU. The ACLU then sent Defendants a letter demanding it change its policies which prevent Constance from attending the prom with a same-sex date and from wearing a tuxedo. It its demand letter, the ACLU gave Defendants until March 10, 2010 in which to respond.

After receiving the ACLU's demand letter, the Itawamba School Board, on March 9, 2010, issued a Notice of Special Board Meeting to be held on March 10, 2010. The Notice clearly stated the meeting was called, "to discuss matters involving prospective litigation." Wiygul, McNeese and School Board Chairman Hood testified that the only issue discussed during that meeting was Constance's requests and the demand letter sent by the ACLU on Constance's behalf. In addition, Chairman Hood testified that the School Board never

considered allowing Constance to attend the prom with her girlfriend or wear a tuxedo to the prom.

On March 10, 2010, after the special meeting was held, the Itawamba County Board of Education, issued a statement to the press, announcing its intent to cancel the prom. The School Board stated in its announcement, in part:

> Due to the distractions to the educational process caused by recent events, the Itawamba School District has decided to not host a prom at Itawamba Agricultural High School this year. It is our hope that private citizens will organize an event for the juniors and seniors. However, at this time, we feel that it is in the best interest of the Itawamba County School District, after taking into consideration the education, safety, and well being of our students, that the Itawamba County School District not host a junior/senior prom at [IAHS].

Constance claims that the prom was cancelled for the purpose of prohibiting her from bringing her girlfriend and wearing a tuxedo to the prom. Defendants argued during the hearing that the School Board did not cancel the prom but merely "withdrew its sponsorship." The Court finds this is nothing more than semantics and the so-called "withdrawal of sponsorship" had the effect of cancelling the prom. In addition, Chairman Hood testified that the School Board "cancelled the prom."

Constance testified that she considered it important to attend prom because it is a "part of high school that everyone remembers" and that she wanted to share that with her girlfriend who is special to her. Constance wants to attend the prom with her girlfriend because she does not want to hide her sexual orientation. Constance further testified that she feels that the school is attempting to force her to pretend that she is someone she is not by going with a male date. Constance testified that she believes gay students have the same right as straight students to not only attend the prom with the person they are dating but also to dance with that person.

According to Constance, "if [she] cannot share the prom experience with [her] girlfriend then there is not any point in going." Constance also believes that students should not be forced to wear clothes that conform to traditional gender norms and testified that she wants to wear a tuxedo to the prom so that she can express to her school community that "it's perfectly okay for a woman to wear a tuxedo, and that the school shouldn't be allowed to make girls wear a dress if that's not what they are comfortable in." Constance does not want to attend the prom if IAHS does not allow female students to wear tuxedos.

Constance alleges that Defendants have effectively banned her from peacefully conveying her social and political viewpoints that "it is appropriate for gay and lesbian students to bring same-sex dates to the prom," and that "it is appropriate for female students to wear tuxedos despite traditional notions of how females should dress." Therefore, on March 11, 2010, Constance filed the present Complaint challenging Defendants' policy and decision to prohibit her from bringing her girlfriend and wearing a tuxedo to the prom, and Defendants' cancellation of the prom as a means of suppressing her constitutionally protected viewpoints in violation of the First Amendment. A separate motion for preliminary injunction was filed on March 16, 2010, and a hearing on the motion was held before this Court on March 22, 2010.

### B. Preliminary Injunction Standard

In order for the court to grant a preliminary injunction, Constance must establish the following elements:

(1)  a substantial likelihood of success on the merits;

(2)  a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied;

(3)  that the threatened injury to the plaintiff outweighs any damage that an injunction might cause the defendant; and

(4)     that granting the injunction will not disserve the public interest.

*Canal Auth. of the St. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

A Plaintiff must establish all four factors by a preponderance of the evidence in order for a preliminary injunction to be issued. *See Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760 (S.D. Tex. 2008); *Curtis v. Smith*, 145 F. Supp. 2d 814, 217 (E.D. Tex. 2001); *Grant v. Smith*, 574 F.2d 252 (5th Cir. 1978).

## C. *Discussion*

### 1. *Canal Authority* Factors

#### a. Substantial Likelihood of Success on the Merits

The First Amendment of the Constitution states that "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I.  "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare ... desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer v. Evans*, 517 U.S. 620, 634-35, 116 S. Ct. 1620, 1628 134 L. Ed. 2d 855 (1996)(*quoting Dept. of Agric. v. Moreno*, 413 U.S. 528, 534, 93 S. Ct. 2821, 2826, 37 L. Ed. 2d 782 1973)). The United States Supreme Court has "recognized that the 'vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'" *Gay Students Org. of Univ. of N.H. v. Bonner*, 509 F.2d 652, 659 (1st Cir. 1974)(*quoting Shelton v. Tucker*, 364 U.S. 479, 487, 81 S. Ct. 247, 251, 5 L. Ed. 2d 231 (1960)). The Fifth Circuit has established that the "expression of one's identity and affiliation to unique social groups" may constitute "speech" as envisioned by the First Amendment. *See Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001).  The United States Supreme Court has also held that "states and their agencies, such as the Defendant, cannot set-out homosexuals for special treatment, neither

inclusive or [sic] exclusive." *Collins v. Scottsboro City Bd. of Educ.*, CV-2008-90 (38th Judicial District March 28, 2008)[1](*citing Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)).

Constance claims Defendants have done exactly that by censoring her peaceful expression of social and political viewpoints central to her sexuality. Constance is an openly gay student who maintains that she has the right to bring a same-sex date to a social function such as the prom. In the Memorandum issued on February 5, 2010, to the IAHS Juniors and Seniors, the School declared its policy that guests "must be of the opposite sex."

In *Fricke v. Lynch*, 491 F. Supp. 381, 385 (D.R.I. 1980), a factually similar case, the United States District Court of Rhode Island held that a male high school student's desire to take a same-sex date to his prom had significant expressive content which brought it within the ambit of the First Amendment. *See Fricke v. Lynch*, 491 F. Supp. at 385. The Rhode Island district court found that Fricke's belief that he had "a right to attend and participate just like all other students and that it would be dishonest to his own sexual identity to take a girl to the dance" coupled with the fact he felt "his attendance would have a certain political element and would be a statement for equal rights and human rights" is "the exact type of conduct" that "can be considered protected speech." *Id.* at 385.

In *Gay Students Organization of New Hampshire v. Bonner*, 509 F.2d 652, 659 (1st Cir. 1974), the First Circuit opined that "GSO social functions do not constitute 'pure speech', but conduct may have a communicative content sufficient to bring it within the ambit of the First Amendment." *Gay Students Org.*, 509 F.2d at 659 (citing *Tinker v. Des Moines Indep. Cmty.*

---

[1] In *Collins v. Scottsboro City Board of Education*, the Circuit Court in Alabama found that the School Board could not legally cancel the prom in order to prevent a same-sex couple from attending. The Circuit Court issued a temporary restraining order requiring Scottsboro High School to conduct the prom on the date previously established, at the same time and place previously established, and to re-issue prom tickets to the Plaintiffs.

6

*Sch. Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968)). The First Circuit held that the University's policy banning the GSO from holding social functions was content related and "the curtailing of expression which [the University] find[s] abhorrent or offensive cannot provide the important governmental interest upon which impairment of First Amendment freedoms must be predicated." *Gay Students Org.*, 509 F.2d at 662 (citations omitted).

According to the clearly established case law, Defendants have violated her First Amendment rights by denying Constance's request to bring her girlfriend as her date to the prom.

Constance further believes that females should be allowed to dress in non-gender-conforming attire, and that, in particular, she should be permitted to wear a tuxedo to the prom. In *Canady*, the Fifth Circuit recognized that "[c]lothing may also symbolize ethnic heritage religious beliefs, and political and social views." *Canady*, 240 F.3d at 440. The Fifth Circuit stated that "the choice to wear clothing as a symbol of an opinion or cause is undoubtedly protected under the First Amendment if the message is likely to be understood by those intended to view it." *Id.* at 441 (*citing Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989)).

The United States Supreme Court has held that "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Texas*, 491 U.S. at 404 (*quoting Spence v. Washington*, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 2729-31, 41 L. Ed. 2d 842 (1974)).

In *Tinker*, students were suspended from school for wearing black armbands in protest of the Vietnam War. *See Tinker*, 393 U.S. at 508-14. The United States Supreme Court held that students may wear color patterns or styles with the intent to express a particular matter unless school officials can demonstrate the expression would "substantially interfere with the work of the school or impinge upon the rights of the other students." *Id*. at 509 (citations omitted).

In *ACT-UP v. WALP*, 755 F. Supp. 1281 (M.D. Pa. 1991), the District Court of the Middle District of Pennsylvania found that the Pennsylvania House of Representatives violated the Plaintiffs' First Amendment rights when it closed the gallery during the governor's speech to prevent members of ACT-UP from expressing their views in an attempt to raise public awareness of acquired immune deficiency syndrome (AIDS). The *ACT-UP* court found that the gallery was a limited public forum, the closure of which was a content-based restriction aimed at preventing access to ACT-UP members. Therefore, since the government failed to establish that the closure was done for a compelling governmental interest, the ACT-UP court held the closure was an improper prior restraint on Plaintiffs' speech. *Id.*, at 1286-91.

In the case *sub judice*, Constance requested permission to wear a tuxedo, or even pants and a nice shirt, to her prom with the intent of communicating to the school community her social and political views that women should not be constrained to wear clothing that has traditionally been deemed "female" attire. Constance was informed by Defendants that girls were required to wear dresses to the prom. In addition, the Notice of a Special School Board meeting to address the "prospective litigation" clearly establishes that the School Board was acting in response to Constance's demand letter which contained her request to bring a same-sex date and wear a tuxedo to the prom.

The record shows Constance has been openly gay since eighth grade and she intended to communicate a message by wearing a tuxedo and to express her identity through attending prom with a same-sex date. The Court finds this expression and communication of her viewpoint is the type of speech that falls squarely within the purview of the First Amendment. The Court is also of the opinion that the motive behind the School Board's cancellation of the prom, or withdrawal of their sponsorship, was Constance's requests and the ACLU's demand letter sent on her behalf. For all of the foregoing reasons, the Court finds that Constance's First Amendment rights have been violated and therefore, she has established, by a preponderance of the evidence, a substantial likelihood of success on the merits with respect to her First Amendment claim.

### b. Substantial Threat of Irreparable Injury to the Plaintiff

The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976).

The Court has already found that Defendants' policies against same-sex dates and girls not wearing tuxedos, along with Defendants' action of cancelling the prom, or withdrawing their sponsorship of the prom, have infringed upon Constance's First Amendment rights and therefore, there is a substantial threat that irreparable harm will occur. The Court finds that Constance has clearly met her burden of persuasion as to the second *Canal Authority* factor.

### c. Harm to the Plaintiff Versus Harm to the Defendant

The threat of injury to Constance clearly outweighs the threat of injury that injunctive relief may cause Defendants. Constance's threat of injury includes loss of her First Amendment rights to freely express her social and political viewpoints by not being allowed to attend the

prom with her girlfriend and being denied the ability to wear a tuxedo to the prom. Defendants argue that hosting the prom will "disrupt its ability to govern local schools and provide and manage a public education program for all students." The record however, does not contain any evidence that hosting the prom or allowing Constance to attend in a tuxedo with her girlfriend has or will disrupt Defendants' ability to govern local schools or its education program. Defendant Wiygul testified that the teachers have been able to maintain order in their classrooms and that the emails, phone calls and other disruptions cited by Superintendant McNeese should not have any impact on the classroom. By contrast, granting injunctive relief requiring Defendants to host the prom as had been originally planned, until the aforementioned issues arose, is unlikely to cause any harm to Defendants.

As such, Constance has met her burden of persuasion by showing by the preponderance of the evidence that the threat of injury she faces outweighs the threat of injury to Defendants.

### d. Public Interest

"[I]t is in the public's interest to protect rights guaranteed under the Constitution of the United States." *Freelance Ent., LLC v. Sanders*, 280 F. Supp. 2d 533, 547 (N.D. Miss. 2003). The United States Supreme Court has stated, "[t]he right to speak freely and to promote diversity of ideas and programs is therefore one of the chief distinctions that sets us apart from totalitarian regimes." *Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 895, 93 L. Ed. 1131 (1949)(*citing De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S. Ct. 255, 260, 81 L. Ed. 278 (1937)).

Constance argues that it is in the public's interest for the Court to issue an injunction against Defendants to protect Constance's rights and encourage the free exchange of ideas and viewpoints.

However, the Court is of the opinion that its failure to grant an injunction in this instance does not disserve the public interest. Defendants testified that a parent sponsored prom which is open to *all* IAHS students has been planned and is scheduled for April 2, 2010. Though the details of the "private" prom are unknown to the Court, Defendants have made representations, upon which this Court relies, that *all* IAHS students, including the Plaintiff, are welcome and encouraged to attend. The Court finds that requiring Defendants to step-back into a sponsorship role at this late date would only confuse and confound the community on the issue. Parents have taken the initiative to plan and pay for a "private" prom for the Juniors and Seniors of IAHS and to now require Defendants to host one as it had originally planned would defeat the purpose and efforts of those individuals.

In addition, the power and interests of an Article III Court has its limits and under the circumstances, the Court cannot go into the business of planning and overseeing a prom hosted by Defendants, especially in light of the fact that the parents of IAHS students have already undertaken such tasks. Therefore, the Court finds that issuing an injunction would be disruptive to the efforts of the community and would not be in the public's interest. As such, the Court finds that Constance has failed to meet her burden of persuasion with respect to the fourth *Canal Authority* element.

### D. Conclusion

In sum, Plaintiff proved, by a preponderance of the evidence, the first three requirements for the issuance of a preliminary injunction in accordance with the factors set forth in *Canal Authority*. The Court finds that Plaintiff has failed to meet her burden of persuasion as to the fourth requirement. As such, the court finds that Plaintiff's motion for preliminary injunction

should be denied. This case remains active and Plaintiff, is she so desires, will be permitted to amend her Complaint to seek compensatory damages and any other appropriate relief.

A separate order in accordance with this opinion shall issue this day.

This the 23rd day of March, 2010.

/s/ John H. Davidson
Senior Judge